Argued March 31, affirmed June 26, 1975

CONSOLIDATED ELECTRICAL DISTRIBUTORS,
INC., *Respondent, v.* JEPSON ELECTRICAL
CONTRACTING, INC. ET AL, *Defendant,*
THUNDERBIRD-KLAMATH FALLS, INC.
ET AL (72-453-E), *Appellants.*

537 P2d 83

*Stuart W. Hill,* Portland, argued the cause for appellants. With him on the briefs were James A. McClaskey, and Gilley, Busey & Porter, Portland.

*Robert K. Winger,* Portland, argued the cause for respondent. With him on the brief were Robert L. Allen, and Morrison, Dunn, Cohen, Miller & Carney, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

This is a suit to foreclose a materialman's lien for electrical fixtures furnished a subcontractor and used in the construction of a restaurant upon property owned by Thunderbird-Klamath Falls, Inc. Defendants appeal from a decree of the trial court foreclosing the lien.

The sole issue upon appeal is whether plaintiff filed its lien within the 45 days provided by ORS 87.035, which states that

"* * * every mechanic, artisan, machinist, builder, lumber merchant, laborer, or other person, except the original contractor, claiming the benefit of ORS 87.005 to 87.075, within 45 days after the completion of the construction, * * * or after he has ceased to furnish materials therefor, shall file for recording * * * a claim containing a true statement of his demand, * * *."

Commencing the latter part of 1971 and continuing to March 30, 1972, plaintiff delivered materials which were of the value of $6,736.03. The final delivery was a shipment from the manufacturer of

five lighting "arms and heads" or fixtures which were to be placed upon light poles for the outside lighting on the restaurant premises. The fixtures weighed about 300 pounds and cost approximately $800. The order for these fixtures was placed with plaintiff by the electrical subcontractor on February 1, 1972. Plaintiff contacted a manufacturer to see if it could supply fixtures to the specifications ordered and was later told that the manufacturer could not furnish them in the voltage requested within the time fixed by plaintiff. Thereafter, on March 6, plaintiff ordered the fixtures from another manufacturer. The fixtures were shipped by the manufacturer on March 21 and were delivered to the electrical subcontractor at the construction site on March 30.

A completion notice was posted on the premises and recorded on March 2; the restaurant was in operation a few days thereafter. The poles for the lights were then in place. Plaintiff filed his lien on May 2, 1972, within 45 days from the delivery of the fixtures but not within 45 days of his last delivery of materials prior thereto and not within 45 days of the notice of completion posted and recorded by the owner on March 2.

It is defendants' contention that (1) the delivery of the fixtures cannot serve as "the last delivery" to commence the running of the statutory filing period of 45 days provided by ORS 87.035, because the delivery of the fixtures was delayed without necessity or valid reason beyond the time it should have been made; and (2) the building was substantially completed and occupied by March 4, "and final delivery was such that it cannot serve to extend the commencement of the statutory period beyond March 4, 1972." The contention which defendants are principally making, according to their brief, is that plaintiff did not prove a valid reason for waiting until March 6

to order the fixtures when everything else was completed.

The following is the explanation given by plaintiff's witness for the delay:

"A. Well, not ordered from that particular company, actually this is an order from another company because the company that we originally were going to order from couldn't deliver them in the voltage and so we were authorized by Mr. Jepson to get a substitute fixture which we did, and that is the fixture here that was ordered on March 6, 1972, the other company couldn't make the delivery date.

"Q. They couldn't make the delivery date?

"A. No, this is not a real common voltage."

The trial judge made a finding that

"* * * [t]he last item of materials supplied by plaintiff was delivered March 30, 1972, was a lienable item delivered in good faith pursuant to plaintiff's contract, * * *."

There is no evidence that the delivery was made as an attempt to revive a stale claim nor did it involve a trivial amount of material. It was an important part of the performance of plaintiff's contract to furnish material. Assuming that unnecessary delay in furnishing material will not extend the time for filing plaintiff's lien even though the delayed material was a substantial part of its contract and was accepted and used, and assuming that the burden is plaintiff's to prove he did not unnecessarily delay, we believe, as did the trial judge, that the delay has been satisfactorily explained. The delay was not great and is of common occurrence in securing non-standard items. Although occupancy of the premises is some evidence of substantial completion, it is not conclusive.

Defendants also contend that even if plaintiff did not unduly delay, its rights cannot be any greater than the rights of the subcontractor which it supplied, and the subcontractor was guilty of unnecessary delay in not ordering the fixtures from plaintiff until February 2. Assuming as well that defendants' contention that plaintiff's right can be no greater than the subcontractor's is correct, there is insufficient evidence of any undue delay on the part of the subcontractor.

The provisions of ORS 87.045① which provide for the posting and filing of a completion notice are masterpieces of obfuscation. We held in *Dallas Lbr. & Supply v. Phillips,* 249 Or 58, 60, 436 P2d 739 (1968) that

"* * * [t]he notice of completion permitted by ORS 87.045 is neither the exclusive nor conclusive test for deciding when completion of a structure has occurred * * *."

---

① "Completion date of improvement; substantial completion or abandonment. (1) As an alternative method for determining the completion date of an improvement, the improvement shall be conclusively deemed completed as to all labor performed and materials used prior to the date of the notice described in this section, when the improvement has been substantially completed, or when it has been abandoned. Cessation of work for 60 days or more shall constitute such abandonment, and either the owner, contract purchaser or mortgagee or his agent shall have posted and recorded a notice in writing stating in substance the following:

"* * * * *.

"(3) Anyone claiming a lien under ORS 87.010 on the premises described in the notice for labor performed and materials used prior to the date of the notice, shall file for record with the recording officer of the county in which the improvement or some part thereof is situated a claim of lien in the form and with the information required by ORS 87.035, and within the periods of time specified in that section; said period of time to commence from the date of filing the notice with the recording officer; otherwise the claim of lien shall be of no force and effect.

"* * * * *."

■ Plaintiff requests attorney's fees upon appeal. ORS 87.060(3) provides in part:

"In all suits under ORS 87.005 to 87.075 the court shall, upon entering judgment for the plaintiff, allow as a part of the costs all moneys paid for the filing and recording of the lien, and also a reasonable amount as attorney's fees; * * *."

This court has held that such a statute is strictly construed and, in the absence of a provision that attorney's fees are allowed upon appeal, none can be allowed for that service. *State ex rel Nilsen v. Adams,* 248 Or 269, 277, 431 P2d 270, 433 P2d 831 (1967); *Adair v. McAtee,* 236 Or 391, 396, 385 P2d 621, 388 P2d 748 (1964). Therefore, plaintiff's request for attorney's fees is denied.

The decree of the trial court is affirmed.